FILED

2008 Aug-27  PM 02:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| KAREN L. WINGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 07-G-1573-M |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

The plaintiff, Karen L. Wingo, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether she has a severe impairment;

(3)     whether her impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

In the instant case,  ALJ Jack F. Ostrander determined the plaintiff met the first two tests, but concluded that while the plaintiff's obesity, back pain, headaches, affective mood disorder with anxiety, and dependant personality disorder are "severe" in combination, they did not meet or medically equal a listed impairment.  [R. 16].  The ALJ found the plaintiff unable to perform her past relevant work, but found that the plaintiff retains the residual functional capacity to perform a limited range of sedentary work. [R. 17].   Accordingly, the ALJ found the plaintiff was not disabled within the meaning of the Act.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in

significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the  Commissioner to establish that he can perform other work.  In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited.  Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the

4

articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law.  Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims."  Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## DISCUSSION

As found by the ALJ, the plaintiff has the following "severe" impairments: obesity, back pain, headaches, affective mood disorder with anxiety, and dependent personality disorder.  [R. 16].  On August 24, 2005, Samuel E. Fleming, III, Ph.D., the Commissioner's consulting neuropsychologist, conducted a comprehensive mental status examination of the plaintiff.  Dr. Fleming concluded:

> Ms. Wingo dropped out of school in the 10th grade but did attend two years of college.  She described having many social difficulties in school.  I would estimate Ms. Wingo to be functioning in the average range intellectually.  Ms. Wingo does have a history of treatment for substance abuse; however, she has not used these substances in the past 24 years.  Ms. Wingo has been treated at a local mental health center for problems with anxiety.  Currently, Ms. Wingo is exhibiting significant difficulty with depression and anxiety.  She does have some history of episodes that seem indicative of auditory and visual hallucinations.  Ms. Wingo does report a history of suicidal ideation but denied intent.  At this time Ms. Wingo does not seem able to cope with the demands of a normal work environment

> from an emotional standpoint.  Her interactions with coworkers and
> supervisors would be difficult given her levels of depression and anxiety.
> Ms. Wingo is capable of understanding instructions and appears able to
> carry out instructions as she demonstrated no attention or short-term
> memory deficits.

[R. 168](emphasis added).  Dr. Fleming diagnosed Major Depressive Disorder, recurrent,

severe with psychotic features, and a Generalized Anxiety Disorder.  [R. 167].

          Dr. Fleming's consultative mental examination also assessed the plaintiff as

having a Global Assessment of Functioning of 45.  [R. 167].  The Global Assessment of

Functioning (GAF) Scale is used to report an individual's overall level of functioning.

Diagnostic and Statistical Manual of Mental Disorders 30 (4th Edition) ("DSM-IV").  A

GAF of 41-50 indicates:  "[s]erious symptoms (e.g., suicidal ideation, severe obsessional

rituals, frequent shoplifting) or any serious impairment in social, occupational, or school

functioning (e.g., no friends, unable to keep a job)."  DSM-IV at 32.  Several courts of

appeal have, in unpublished or non-precedential opinions, considered the impact of a

claimant's GAF score of 50 or below.  The courts generally find that a GAF score of 50

or below is not in and off itself determinative of disability.  See Hillman v.Barnhart, 48

Fed Appx. 26, 2002 WL 31260962 at * 3, n.1(3rd Cir. 2002)(not precedential)(noting that

a GAF of 50 would indicate a claimant could perform some substantial gainful activity);

Rutter v. Comm'r of Soc. Sec., 91 F.3d 144 (Table), 1996 WL 397424 at *2 (6th Cir.

1996)(unpublished opinion)(exclusive reliance on GAF score not appropriate);

Roemmick v. Shalala, 59 F.3d 176 (Table), 1995 WL 299894 at *2, n.1 (9th Cir.

1995)(noting that an inability to work is only one example of the level of adaptation

meriting a GAF of 40); <u>Seymore v. Apfel</u>, 131 F.3d 152 (Table), 1997 WL 7555386 at *2 (10th Cir. 1997)("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work.); <u>Stalvey v. Apfel</u>, 242 F.3d 390 (Table), 2001 WL 50747 at *2 (10th Cir. 1999)("The GAF is not an absolute determiner of ability to work."). <u>But</u> <u>cf.</u> <u>Lloyd v. Barnhart</u>, 47 Fed. Appx. 135, 2002 WL 31111988 at *1, n.2 (3rd Cir. 2002)(not precedential)(noting that a vocational expert at the administrative hearing testified that a GAF of 50 or lower would indicate claimant would not be able to keep a job). Dr. Fleming's assessment was consistent with the plaintiff's treatment at Eastside Mental Health Center, where she was also found to have a GAF of 45 in February, 2003.  [R. 143].

       The ALJ refused to give significant weight to Dr. Fleming's expert opinion, and chose to rely on the non-examining reviewing psychiatrist because of his "greater expertise and knowledge base."  [R. 20].   The present case bears a resemblance to the situation in <u>Wilder v. Chater</u>, 64 F.3d 355 (7th Cir. 1995).  In that case the court was faced with an ALJ who had improperly ignored the opinions of a consulting psychiatrist who was appointed by the Commissioner.  The <u>Wilder</u> court observed:

> We are led to consider with a degree of suspicion the administrative law judge's decision to go against the <u>only medical evidence in the case, that of a psychiatrist not retained by the applicant but appointed by the administrative law judge himself</u> to advise on Wilder's condition. . . . The psychiatrist's testimony, though conclusional (but then no one pressed him

to elaborate the grounds for his conclusions), was the only direct testimony concerning the critical issue of the date of onset of Wilder's disabling depression.   Severe depression is not the blues.   It is a mental illness;  and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it.   The question what stage a physical or mental illness had probably reached some years before it was first diagnosed is a medical question, and <u>the uncontradicted evidence of the only disinterested expert to opine upon it is entitled to considerable weight</u>.   We do not say conclusive weight;  but the facts on which the administrative law judge relied to contradict that evidence are singly and together unimpressive.

<u>Id.</u> at 337 (emphasis added)(citations omitted).

An ALJ may not arbitrarily reject uncontroverted medical evidence.

<u>Walden v. Schweiker</u>, 674 F.2d 835, 839 (11th Cir. 1982).  In rejecting Dr. Fleming's

opinion, the ALJ "succumbed to the [forbidden] temptation to play doctor and make [his]

own independent medical findings."  <u>Rohan v. Chater</u>, 98 F.3d 966, 970 (7th Cir. 1996).

Moreover, he chose to substitute his opinion for that of the consulting neuropsychologist[1].

As such, the ALJ's minimization of the plaintiff's mental status is not supported by

substantial evidence.

---

[1]  "Clinical psychologists deal with quintessentially subjective information with respect to which they must exercise professional, interpretive judgment."  <u>Matthews v. Barnhart</u>, 347 F.Supp.2d 1093, 1101 (M.D.Ala. 2003).  The ALJ relied on the state agency reviewing psychiatrist, Frank Nuckols, M.D., who had never seen, treated or examined the plaintiff.  As the diagnosis of depression and anxiety is subjective, and not necessarily based on objective findings, it was improper for the ALJ to reject the examining neuropsychologist's opinion in favor of the non-examining, reviewing psychiatrist.

8

At the hearing, Dr. William A. Crunk, Jr., a Vocational Expert (VE),

testified:

ATTY:      Dr. Crunk, if the Judge accepts the opinion of Dr. Fleming who did
           the psychological examination that, that her GAF score is 45 and he
           does not feet that she would be able to cope with the demands of a
           normal work environment from an emotional standpoint, if the Judge
           accepts that opinion as valid and supported by the medical evidence
           of record, are there any jobs in the national economy that the
           claimant could perform?

VE:        No.

ATTY:      Is that because of the emotional situation?

VE:        Correct.

ATTY:      In looking through the file, and I pointed out to the Judge, the only
           three [sic][2] GAF scores I see are all below 45.  What's the effect if
           the Judge accepts the GAF scores as being valid of somebody having
           a GAF score of 45?

VE:        Well, if the GAF score is supported by the documented evidence of
           other symptoms and causes of mental impairment, then that would
           indicate a person is unable to function in a work setting.

ATTY:      Am I correct that normally you've got to have at least above 50 in
           order to be not emotionally prohibited from working normally?

VE:        Yeah, yeah.

[R. 256].

------------

[2]  The ALJ found, correctly, that "the GAF of 49 referenced by the claimant's
attorney in December, 2005 (Exhibit 10F) is a BMI or body mass index, and not a GAF."
[R. 17].  At the examination where the BMI of 49 was calculated, the plaintiff's height
was five feet, four inches, and her weight was 269 pounds.  [R. 196].  Still, the plaintiff
was found to have a GAF of 45 on February 5, 2003, [R. 143], and a GAF of 45 on
August 24, 2005.  [R. 167].

## CONCLUSION

In order to find the plaintiff not disabled in the present case, the ALJ rejected the opinion of his own clinical neuropsychologist, who examined the plaintiff, in favor of a non-examining reviewing psychiatrist.  His rejection of his own consultative examiner's findings is not supported by substantial evidence.  The VE testified that if Dr. Fleming's opinion that the plaintiff has a GAF of 45 were credited, there would be no work the plaintiff could perform.  Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work.  Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.  An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 27 August 2008.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.